UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PHILLIP J. CHARVAT, | : |
| Plaintiff, | : Case No. 2:14-cv-01366 |
| vs. | : |
| MONITRONICS INTERNATIONAL, INC., a Texas Corporation; UTC FIRE & SECURITY AMERICAS CORPORATION, INC., a Delaware Corporation; HONEYWELL INTERNATIONAL INC., a Delaware Corporation; ISI ALARMS NC INC., a North Carolina Corporation; and ALLIANCE SECURITY INC., a Delaware Corporation, | : |
| Defendants. | : |

## CLASS ACTION COMPLAINT

Plaintiff Philip J. Charvat brings this action to enforce the Telephone Consumer Protection Act's ("TCPA") strict limits on telemarketing calls placed through automated telephone dialing systems ("ATDS") and artificial or prerecorded voice messages, and calls placed to numbers listed on the Do Not Call Registry. On behalf of the proposed classes defined below, Plaintiff seeks statutorily-authorized damages of $500-$1,500 per illegal call, as well as injunctive relief requiring Defendants to comply with the law.

### I. JURISDICTION AND VENUE

1. This Court has subject matter and federal question jurisdiction under 28 U.S.C. § 1331 because this action involves violation of a federal statute, the TCPA.

2. Venue is proper in this District because Plaintiff is a resident of this District and received the calls in question here and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction.

## II. PARTIES AND DEFINITIONS

3. Plaintiff is a resident of Ohio and this District.

4. Defendant Alliance Security Inc. is a Delaware corporation. Alliance Security Inc. is the new corporate name of Versatile Marketing Solutions, Inc., d/b/a VMS Alarms, a Massachusetts corporation. In this complaint, Alliance Security Inc. is referred to as "VMS/Alliance," or sometimes "VMS." VMS/Alliance is an alarm-systems dealer.

5. Defendant Monitronics International, Inc. ("Monitronics") is a Texas corporation. Monitronics is an alarm-monitoring company.

6. Defendant UTC Fire & Security Americas Corporation, Inc. is a Delaware corporation. It sometimes does business as GE Security, and is referred to herein as "UTC," "GE Security," or "GE." UTC is an alarm-systems manufacturer.

7. Defendant Honeywell International Inc. ("Honeywell") is a Delaware corporation that manufactures and sells alarm systems.

8. Defendant ISI Alarms NC Inc. ("ISI Alarms") is a North Carolina corporation and former alarm-systems dealer.

9. As used in this Complaint, the terms:

   a. "Monitronics Authorized Dealer" means a security-systems dealer who has or had an agreement with Monitronics that permits it to hold itself out as an authorized dealer or distributor of Monitronics services, and who uses telemarketing in its sales efforts; and

    b. "UTC Authorized Dealer" means a security-systems dealer who has or had an agreement with UTC that permits it to hold itself out as an authorized dealer or distributor of UTC or GE Security products, and who uses use telemarketing in its sales efforts.

10. VMS/Alliance is or was a Monitronics Authorized Dealer and UTC Authorized Dealer. ISI Alarms is or was an authorized dealer for Honeywell.

### III. FACTUAL BASIS FOR THE COMPLAINT

11. Beginning in July of 2012, Plaintiff Philip J. Charvat received numerous live and prerecorded/ATDS calls from ISI Alarms attempting to sell him alarm systems manufactured by Honeywell and alarm-monitoring services provided by Monitronics.

12. The calls were placed to Mr. Charvat's residential telephone lines, (xxx) xxx-1341, and/or (xxx) xxx-8940, numbers listed on the national Do Not Call Registry as of September 11, 2011.

13. On more than one occasion, a telemarketer represented to Mr. Charvat that he or she was an employee representative of Monitronics, Honeywell, or "ISI Honeywell."

14. From 2009 through 2013, Mr. Charvat also received numerous live and prerecorded calls on his residential telephone line from VMS/Alliance attempting to sell him alarm systems manufactured by UTC and alarm-monitoring services provided by Monitronics.

15. Mr. Charvat received calls from VMS/Alliance after receiving sham "safety survey" calls from Total Survey Solutions, or TSS. The survey calls were placed by TSS on behalf of VMS/Alliance.

16. VMS/Alliance is liable under all Counts for placing calls as alleged above.

17. VMS is liable under Count One (47 U.S.C. § 227(b)(1)) because it or its agents used an ATDS or artificial or prerecorded voice to place nonexempt calls to cellular or residential telephones without the recipient's prior express consent.

18. VMS is liable under Count Two (47 U.S.C. § 227(c)) because it or its agents placed telemarketing calls to numbers on the DNC Registry without the recipient's signed, written agreement to receive telemarketing calls.

19. ISI Alarms placed telemarketing calls in violation of the TCPA and is liable under all Counts for placing calls as alleged above. ISI Alarms is liable under Count One (47 U.S.C. § 227(b)(1)) because it or its agents used an ATDS or artificial or prerecorded voice to place nonexempt calls to cellular or residential telephones without the recipient's prior express consent. ISI Alarms is liable under Count Two (47 U.S.C. § 227(c)) because it or its agents placed telemarketing calls to numbers on the DNC Registry without the recipient's signed, written agreement to receive telemarketing calls.

20. UTC is liable for the TCPA violations of UTC Authorized Dealers because:

   a. UTC Authorized Dealers placed calls on behalf of, and for the benefit of, UTC;

   b. UTC Authorized Dealers placed calls under UTC's actual authority;

   c. UTC Authorized Dealers placed calls under UTC's apparent authority; or

   d. UTC ratified the illegal conduct of UTC Authorized Dealers.

21. Monitronics is liable for the TCPA violations of Monitronics Authorized Dealers because:

   a. Monitronics Authorized Dealers placed the calls on behalf of, and for the benefit of, Monitronics;

  b. Monitronics Authorized Dealers placed the calls under Monitronics' actual authority;

  c. Monitronics Authorized Dealers placed the calls under Monitronics' apparent authority; or

  d. Monitronics ratified the illegal conduct of Monitronics Authorized Dealers.

22. Honeywell is liable for the TCPA violations of UTC Authorized Dealers and ISI Alarms. As a manufacturer of alarm systems, Honeywell generally does not sell its products directly to consumers. Instead, it markets and distributes its alarm systems through authorized dealers, including ISI Alarms, who are paid commissions based in part on the amount of Honeywell products they sell. Honeywell describes its relationships with its dealers in terms that demonstrate joint venture, partnership, and agency relationships with those dealers, and in fact is engaged in such relationships with them.

23. Honeywell has written dealer agreements with its authorized dealers.

24. Under the dealer agreements, Honeywell allows dealers to use the Honeywell trade name, trademark and service mark to market and sell Honeywell alarm systems. Honeywell has failed to control and prevent its dealers, including ISI Alarms, from engaging in and benefiting from illegal telemarketing.

## IV.  APPLICABLE LAW

**A.** **TCPA § 227(b) regulates autodialer and artificial or prerecorded voice calls to cellular and residential phones.**

25. U.S.C. § 227(b) regulates so-called "robocalls" – calls placed using an ATDS, and calls using an artificial or prerecorded voice.

26. Regarding telephone numbers assigned to a cellular telephone service, the statute prohibits calls using an artificial or prerecorded voice, and ATDS calls – other than emergency calls or calls placed with the prior express consent of the called party. *Id.* § 227(b)(1)(A).

27. With respect to residential telephone lines, the statute prohibits all calls using an artificial or prerecorded voice – again, other than emergency calls or calls made with prior express consent. *Id.* § 227(b)(1)(B).

28. In other words, with respect to nonconsensual, nonemergency calls to *cell phones*, both ATDS and artificial/prerecorded voice calls are prohibited; with respect to nonconsensual, nonemergency calls to *residential phones*, only artificial/prerecorded voice calls are prohibited.

29. The TCPA requires prior express consent from the called party with respect to calls placed to both cell phones and residential phones.  Prior express consent is consent that is clearly and unmistakably conveyed by the call recipient to the party placing the call; implied consent is not sufficient.

30. Persons who receive calls in violation of these provisions may bring an action to recover the greater of the monetary loss caused by the violation, or $500. *Id.* § 227(b)(3).  If the Court finds the defendant willfully or knowingly violated § 227(b), the Court may increase the award to up to $1500 per violation. *Id.*

**B.   TCPA § 227(c) regulates telemarketing calls made to phone numbers listed on the Do Not Call Registry.**

31. Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the national Do Not Call Registry. *See* 47 C.F.R. § 64.1200(c)(2).  According to the FTC, the Registry, which was established in 2003, currently has over 223 million active registrations.  A listing on the Registry must be honored

6

indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id*.

32. Because a telephone subscriber listed on the Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the Registry must take a similarly affirmative step, and must obtain the registrant's ***signed, written agreement*** to be contacted by the telemarketer. *Id.* § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. *Id.*

      A.    A person whose number is on the Registry and has received more than one telephone solicitation within any twelve-month period by or on behalf of the same entity in violation of the TCPA can sue the violator and seek the same statutory damages available under § 227(b) – the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

      B.    Telemarketers who wish to avoid calling numbers listed on the Registry can easily and inexpensively do so by "scrubbing" their call lists against the Registry database. The scrubbing process identifies those numbers on the Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

**C.**    **The TCPA imposes liability on entities that do not directly place illegal calls.**

33. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls.

34. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."

7

*See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

35. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

36. The FCC reaffirmed this in 2013, when it held (a) with respect to violations of § 227(b), a seller may be liable under principles of apparent authority, actual authority, and ratification for telemarketing violations placed by third parties, and (b) with respect to violations of § 227(c), a seller may be liable under those same principles, and, under the express terms of the statute, for calls placed "on behalf of" the seller. *In re Joint Pet. Filed by Dish Network,* 28 FCCR 6574 (2013).

## V.  CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class and Subclass:

> a. *The Class*: All persons or entities within the United States who received, since May 18, 2007, a non-emergency telephone call (excluding TSS Survey Subclass calls) from or on behalf of Defendants promoting their goods or services:

      (i) to a cellular telephone number through the use of an automatic telephone dialing system or an artificial or prerecorded voice; or

      (ii) to a residential telephone number through the use of an artificial or prerecorded voice; or

      (iii) to a cellular or residential telephone number registered on the national Do Not Call Registry and who received more than one such call within any twelve-month period.

   b. *TSS Survey Subclass*: All persons or entities within the United States whose telephone numbers were listed on the Do Not Call Registry, and to whom, at any time on or after May 18, 2007, more than one call within any twelve-month period from or on behalf of Defendants was placed based upon sales leads provided by Total Survey Solutions, promoting Defendants' goods or services.

38. Excluded from the Class and Subclass are Defendants; any entities in which they have a controlling interest; their agents and employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family; and claims for personal injury, wrongful death, and/or emotional distress.

39. Plaintiff proposes that he serve as class representative for the Class and the TSS Survey Subclass.

40. The class members are identifiable through telephone records and telephone number databases used to transmit calls to class members.

41. Numerosity is satisfied. There are hundreds of thousands of class members. Individual joinder of these persons is impracticable.

42. There are questions of law and fact common to Plaintiff and to the proposed classes.

43. Plaintiff's claims are typical of the claims of subclass members.

44. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the class members, he will fairly and adequately protect the interests of the class members, and he is represented by counsel skilled and experienced in class actions.

45. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

46. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## VI.  LEGAL CLAIMS

### Count One:

### Violation of § 227(b)(1) for calls made using an ATDS or artificial/prerecorded voice

47. Each Defendant violated 47 U.S.C. § 227(b)(1) by making calls, either directly or through the actions of others, using an automatic telephone dialing system or an artificial or prerecorded voice to cellular telephone numbers without the prior express consent of the called party, or using an artificial or prerecorded voice to a residential telephone number without the prior express consent of the called party.

### Count Two:

### Violation of § 227(c) for calls placed to numbers listed on the Do Not Call Registry

48. Each Defendant violated 47 U.S.C. § 227(c) by sending, either directly or through the actions of others, telephone solicitation calls to telephone numbers listed on the national Do Not Call Registry.

## VII.  RELIEF SOUGHT

Plaintiff requests the following relief:

1. That the Court certify the subclasses proposed above under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

2. For each violation of the TCPA, a $500 penalty awarded to Plaintiff and each class member;

3. For each willful or knowing violation of the TCPA, a $1,500 penalty awarded to Plaintiff and each class member;

4. That the Defendants, and their agents, or anyone acting on their behalf, be immediately restrained from altering, deleting, or destroying any documents or records which could be used to identify the members of the subclasses; and

5. That Plaintiff and all class members be granted such other and further relief as is just and equitable under the circumstances.

**Jury trial demanded.**

DATED: August 26, 2013

        PLAINTIFF, PHILIP CHARVAT,

        By his attorneys

        **/s/ Brian K. Murphy**
        Brian K. Murphy (0070654), Trial Attorney
        Joseph F. Murray (0063373)
        Murray Murphy Moul + Basil LLP
        1533 Lake Shore Drive
        Columbus, OH 43204
        (614) 488-0400 phone
        (614) 488.0401 facsimile
        E-mail: murphy@mmmb.com
              murray@mmmb.com

        Anthony Paronich
        Broderick Law, P.C.
        125 Summer St., Suite 1030
        Boston, MA 02110
        (508) 221-1510 phone
        (617) 830-0327 facsimile
        Email: anthony@broderick-law.com